Mr. Seamans, are you with us? Yes, I am. Very good. And Ms. Smith? Yes, I'm here. Thank you. Thank you. 20-2950 from the Eastern District of Missouri, Piatoso v. Republic Services, et al. Good afternoon, Mr. Seamans. You may proceed. May it please the court. Mike Seamans for Piatoso, Inc., the appellants. The contracted issue in this case is pretty straightforward. It's two pages, and obviously the issue and dispute is under what circumstances the defendants are allowed to increase the rates for waste collection under the contract. There are two main categories of rate adjustments allowed. The first one is a rate adjustment based on increased costs of defendants doing business. Basically, the parties agreed to pre-authorize defendants to increase charges to the customers in the event defendants' costs of providing the trash collection services went up. The second category, which is the category at issue here, is the category which states that defendants may also increase prices for any reasons other than costs of doing business based on either the verbal or the written consent of the parties or by the actions and practices of the parties. The most important thing to remember is basically every time the defendants increase the charges under that second category, which required the customer's consent, that's a modification of their original contract. The modification of the contract is of a material term, the price, and the parties basically have to reach a mutual agreement under Missouri law regarding contract modification. The same elements of forming the original contract have to be present for the modification of the contract. Well, counsel, let me ask you a question. Missouri says silence creates the inference that consent is given. Does that settle this case given your eight years of doing nothing? No, sir, I respectfully disagree. So, because there were two categories of charges which could be imposed and we thought we were paying the first charge category, our silence doesn't indicate anything. Now, I agree that if the contract had a flat rate and our price was going up every month and we should have known that the contract prevented any price increase, that would be acquiescence or waiver, possibly. But in this situation, it's important to look at all the facts of the situation. For example, under the contract, the defendants were allowed to impose late fees and did for nonpayment of an invoice. So, the customer would receive a total due invoice saying you owe X dollars and you have to pay that within 20 days under the terms of the contract. If you don't pay it, you're going to owe us late fees. We can suspend or terminate service. You might have to pay us liquidated damages if you don't pay that invoice. So, if you look at all the language of the contract as a whole, the defendants basically created the impression that everything that showed up on the invoice was mandatory and that none of that was consent required charges. In terms of the district court's decision, the district court interpreted the actions and practices language of the contract to include the term payment. The definition or actions and practices is not anywhere in the contract that payment of the invoice constitutes consent to a price increase. The district court added that term itself, and they did not cite any cases for any common law doctrine. For example, the district court specifically stated they did not apply the voluntary payment doctrine in reaching their decision. They did not apply an implied contract theory. They just interpreted the language actions and practices to include payment of an invoice. But again, a reasonable jury or fact finder could determine that based on the way the invoice is presented to the customer, no reasonable person would know that there were consent required charges included on that invoice. In addition, consent would be a fact-based affirmative defense. All the actions and practices of the parties have to be analyzed. We're not required to include every single action and practice which has to be analyzed in the pleading. It was specifically alleged that our actions did not constitute consent and that we were paying it under a mistaken impression of what the charges were for. And basically, the defendants do not allow or provide any opportunity to opt out or withhold consent once that amount is placed on the invoice. And again, from a rational standpoint, you know, if the customer is required to provide consent to a charge and they're not receiving a new benefit, there's no rational situation under which the customer would provide consent to a price increase, they weren't required to pay. They're not receiving anything for it, and there's just no reason they would do that. It doesn't make any sense. I'll reserve the rest of my time for rebuttal, Your Honor. Very well. Thank you, Mr. Siemens. Court will hear from Ms. Smith. Good afternoon, Your Honor. It's Barbara Smith for Applebee's. I think this is a straightforward appeal that should be an easy affirmance, and that's because the decision below granted the motion to dismiss based on a plain language interpretation of an unambiguous contract. That's a legal question that's properly decided at the motion to dismiss stage. I agree with the other side that this whole appeal can likely be resolved by reference to JA pages 28 to 30. Those are the terms of the contract itself, as well as an example of the side is complaining. Although the briefing in this case on the other side goes out of its way to make increased charges and fees and variances sound incredibly complicated, actually the terms of the contract are very straightforward. That's what matters here as a legal proposition, what the contract actually says, not how the other side describes it. Or as you said in an earlier case, Judge Benton, a statement after a contract is signed can't vary what the contract actually means. So I think if you turn to JA page 29, which is the substance of the agreement at issue, happy to walk through why I think the plain language supported dismissal here. The first paragraph of the contract is entitled payment, and that spells out what the obligations of the appellant are. They're required to pay the company, that's the appellee, quote, at the rates provided in the agreement. The paragraph immediately following that and how they can be adjusted over time. Specifically, the rates can be adjusted without consent for one of any five reasons, which aren't at issue here, or with the customer's consent for any other reason. And then importantly, the rate adjustment provision paragraph goes on to describe how consent can be obtained. In particular, it gives three ways you can obtain customer consent. One, verbally. Two, in writing. And three, according to the party's actions or practices. And those, of course, are distinct terms that we each give their own meaning. So if the customer had consented verbally, that would be one thing. If they had written a letter or an email, that would be something else. Or there's this third bucket, what constitutes an action or practice. So here, the customer paid its bills on time for eight years in the face of bill amounts without complaint. And the question is whether paying those bills constitutes an action or a practice as we understand those plain terms' meanings. So just to reiterate, there's no dispute that there's a valid and enforceable contract. There's no dispute that the bills were paid. There's no dispute that the rates increased over time. The only operative legal question is whether consistent payment of those bills over time constitutes an action or practice that evinces consent. And here, it does. So... Ms. Smith, what about, though, the allegation that Piatoso always believed that the rate increases were for one of the five reasons, and therefore, it wasn't really a matter of consent? Doesn't that make a difference? I don't think it does make a difference based on, again, the plain language of the contract itself, which doesn't have any sort of explanation requirement or knowledge requirement. And I think the facts of what happened here actually explain... Wait, wait, wait, wait. But you can't really consent to something if you don't have knowledge of it, can you? Well, the rate adjustments paragraph makes clear that rates can increase over time, and that's what happened here. And they can increase over time for one of... There's two buckets. One is for without consent for the five reasons, and one is with consent. And Piatoso has alleged that he believed that each of these raises was for one of the five reasons, or some combination of the five reasons, and that, therefore, consent really wasn't on the table. So based on that... Go ahead. I'm sorry, didn't mean to interrupt you, Judge. No, no, go ahead. I think if there was any confusion on the part of the customer over the course of eight years, what the basis for the rate increase was, knowing, as the customer did, that it could have been for a reason of Apelli's choosing, all they had to do was pick up the phone and ask, send an email and inquire, or decline to pay the increased rate at all, which would be an action or practice that evinced they did not consent to the rate increase. So there's no affirmative obligation in the contract that Apelli's explain the reason for the rate increase, although I think if you look at the example bill on JA30, you'll find that in practice, they did explain the basis for the rate increase, and that's because you'll see that the fees provision in the bills are separately spelled out from the rate itself, and it's the rate itself that the appellant is challenging. So I think if there were any question why that rate was increasing, if they wanted to know, hey, does this fall into one of those mandatory buckets or does this fall into that discretionary bucket, again, all they had to do was ask or send an email or decline to pay the increased amount, but there's no, if they wanted an explanation component written into the contract, that's something they could have bargained for at the outset. Of course, they didn't do that. And I'd like to just go one step further and explain why that's not an unfairness to the appellant, and that's because the decision through an action or practice not to pay an increased rate still obligates my client to perform the service. So if the other side had said we're not going to pay this increased rate because we think it's discretionary or we just don't want to, we would still be required to provide the same service at the lower rate for three years, and that's JA28, which indicates the contract is for three years. So, you know, all of that to say, I don't think you can write into a contract a term that doesn't exist in it after the fact merely because you're dissatisfied with the amount that you paid, again, consistently over the course of eight years. If you wanted some sort of additional explanatory requirement in the terms of the contract itself, you could write that in at the beginning, but simply being dissatisfied with the amount that you paid isn't enough to contest it after the fact. Counsel, what's, this is Missouri law, right? That's right, your honor. Okay, now, what is the best case, several Missouri cases have language about, signs, actions, facts, inaction, silence, that create the inference of consent? What do you think is the closest Missouri case on this? Well, with your permission, your honor, I'll give you two cases, one from the Eighth Circuit and one Missouri state court case. The Eighth Circuit case is Dubinsky from 2010. Judge Grunder and Judge Shepard, you were both on the panel in that very well-reasoned decision, which makes clear that at the motion to dismiss stage, the court can affirm based on the written terms of a contract when those terms are plain and unambiguous, according to their meaning, quote, as understood by the average person. So that's the legal standard I would use to apply, to apply to the facts here. And then as to the question whether payment of the bill constitutes consent as a legal matter, I'd point the court to the Missouri appellate decision from 1969 that held that when a plaintiff had repeatedly made payments over the course of 18 to 20 years without contesting the basis for those payments in any way, that that evinced consent to paying the fees that were challenged after the fact. So I think that's a pretty squarely on-point case for us in terms of, you know, the fact that paying can be considered consent. Does the kosher case use the silence language, do you know? I don't believe so, your honor, although I will agree with you that the silence language is also very helpful. Counsel, why isn't this a case where at some point somebody's going to have to take a look at the course of dealing between these parties and determine what that, what that means, whether that, whether that course of dealing would constitute an action and practice that would evidence consent? Why, why isn't that really what we're talking about? And then furthermore, isn't the evaluation of a course of dealing, isn't that typically a factual matter? Well, so I think, I think it's not a factual matter here because the operative term in the contract is action or practice. And so the legal question is, is payment of the bill an action or practice? And I think any rational understanding of the facts here, the answer to that question is yes. And the reason that's so is if you take the facts in the complaint as alleged, these bills go out, you know, 20 days before they're due, which is plenty of time if the other side wanted to, to contest the amount of the bill itself. And they're bills in advance for the next month's service. So although, you know, in the reply brief in particular at page six, there are these allegations about the late fees provision making this coercive, I just don't think as a matter of the facts pled in the complaint, that's so. So the bill goes out, the other side has an opportunity to review it and to, you know, give their consent to increased rates, again, verbally in writing or by paying the bill itself. That's how lots of bills and lots of commercial contracts work. Well, it may be payment of the bill may be an action or practice. But the question is, what is, what does it mean? And the contract says it may, may be evidenced by actions and practices. That's right, Your Honor. And I think any, any normal understanding of the payment of a bill is that by paying it, you are consenting to the amount of that bill. And if the other side wanted to pay the bill and contest it, of course, they could have done that, right? They could have paid the bill and sent a letter at the same time saying, we're making this payment to, you know, if they were worried about this to avoid a late fee, but we contest the amount of the payment. And again, they didn't do that. So that's why I think payment itself constitutes consent. What, why would they consent to pay amounts they had no obligation to pay? So, Your Honor, I think this is a really important question and it touches on a case raised in the reply brief in the third circuit, the Payoella case that says no, no party would agree to price gouging. And, you know, that case I think is just distinguishable from ours on one really important fact, which is that fraud there was actually alleged. So the customer called, called the company and said, what is the basis for the increase in price? The company committed fraud and lied about the basis for the price increase. And that was why the customer paid. Of course, that's not what happened here. What happened here, and if you look at paragraph 79 of the complaint, you'll see that when the customer ultimately did call the complaint about the price, the Apple Lee agreed to lower it. And the customer was simply dissatisfied with that and took their business elsewhere. So, you know, I think that's exactly what should happen in a sophisticated commercial contract like this. If you're dissatisfied with the bill amount, you call and complain and the company either decides to lower it or it doesn't, and you take your business elsewhere or you don't. So respectfully, Your Honors, we'd ask that the court affirm. Very well. Mr. Siemens, you have rebuttal time. Yes, Your Honors. In terms of, you know, the customers calling and asking for information or complaining, number one, we didn't have access to any of the accounting information that defendants used to calculate the charges. We didn't know whether the price increase was due to transportation costs going up or if it was a consent required charge. Whether or not defendants would have actually provided us with that information if we contacted them, that's a factual dispute. That's something which would have to be addressed. Let me interrupt you. I get your points. You heard the other side. I heard them say, boy, the Kosher Zion case, we're really banking on. And I kind of agree with them. That's really the closest Missouri case. And I don't think you've ever commented on it. Do you want to talk about Kosher Zion Missouri Court of Appeals and what it says? It seems awfully close. Sure. So the Kosher Zion case is an applied contract case. First of all, the district court specifically stated in their order on the motion for reconsideration that they were not basing their decision on an implied contract theory, which is what the Kosher Zion case is. Number two, the Kosher Zion case goes into detail and addresses that there must be a mutual understanding and agreement between the parties in order for an applied contract to exist. Our position is there was never a mutual understanding agreement between the parties. And let me point out that mutual understanding agreement would have to take place for each individual price increase. If defendants are saying we're consenting by payment, then we have to have a mutual understanding agreement for each price increase that we know what that price increase is based on and that we're voluntary paying it. Now, the fact that we thought we were paying charges which were mandatory is, again, reinforced by the fact we could get hit with late fees if we didn't pay the invoice. Defendants provide no procedure for opting out of any of on the invoice and they do pursue collection if the invoice is not paid in its entirety. And the mutual agreement language from Kosher Zion, basically, in order to have a mutual agreement, we have to know what we're getting into. I have a case site which counters that. The Zumwinkel versus Leggett case, the site is 345 Southwest 2nd 89. It's a Missouri Supreme Court case. And it says acts which are consistent either with the continued existence of the original contract or with the modification thereof are not sufficient to establish a modification. So, if we're paying the invoice thinking we're paying the mandatory charges, but defendants are claiming they're asking for our consent to a price increase which is not mandatory, our argument as in accordance with the original contract prior to any price increase, that does not constitute a mutual agreement or a consent to the modification of the price. Do you know the procedure? Sorry, I was looking. I don't have the case here. I am mildly familiar with it. Do you know the procedural posture of Kosher Zion when it was I believe. Okay, we'll find out. Thank you. Proceed. I believe that's all I have, your honors. Very well, thank you, Mr. Siemens. Ms. Smith, we appreciate your appearance and argument today. The case is submitted and we will decide it in session. Ms. Rudolph, does that complete our argument calendar for the day? Yes, it does.